UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM E. CLIFTON, aka BILL CLIFTON, aka WILLIAM CLIFTON, aka WILLIAM EDWARD CLIFTON, <br><br>　　　　　Petitioner, <br><br>vs. <br><br>DEBRA DEXTER, WARDEN, <br><br>　　　　　Respondent. | Case No. CV 08-5203-DOC(RC) <br><br><br><br><br><br><br>REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable David O. Carter, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**BACKGROUND**

**I**

On May 3, 2006, in Santa Barbara County Superior Court case no. 1207485, a jury convicted petitioner William E. Clifton, aka Bill

1  Clifton, aka William Clifton, aka William Edward Clifton, of one count
2  of transportation of a controlled substance (cocaine) in violation of
3  California Health & Safety Code ("H.S.C.") § 11352(a) (count 2) and
4  one count of attempted destruction of evidence in violation of
5  California Penal Code ("P.C.") §§ 664/135 (count 3), and the jury
6  found it to be true that petitioner had suffered three prior prison
7  terms of which he did not remain free for five years subsequent to
8  release from custody within the meaning of P.C. § 667.5(b); however,
9  the jury could not reach a verdict on the charge petitioner resisted
10 an executive officer by force in violation of P.C. § 69 (count 1), and
11 the trial court declared a mistrial on that count.  Clerk's Transcript
12 ("CT") 33-36, 201-02, 308-13.  The petitioner was sentenced to the
13 total term of 13 years in state prison.  CT 467-71.

15    The petitioner appealed his convictions and sentence to the
16 California Court of Appeal, CT 472-73, 476; Lodgment nos. 3-4, and,
17 while his appeal was pending, petitioner, proceeding pro se, also
18 filed a habeas corpus petition in the California Court of Appeal,
19 which the Court of Appeal considered concurrently with the appeal.
20 Lodgment no. 10.  On November 27, 2007, the California Court of Appeal
21 affirmed petitioner's judgment in an unreported opinion and denied his
22 habeas corpus petition, with citations to People v. Romero, 8 Cal. 4th
23 728, 737 (1994), and People v. Brodit, 61 Cal. App. 4th 1312, 1333
24 (1998).  Lodgment nos. 5, 11.  The petitioner then sought a rehearing
25 from the California Court of Appeal, which denied his request on
26 December 18, 2007.  Lodgment nos. 6-7.  On January 4, 2008,
27 petitioner, proceeding through counsel, filed a petition for review in
28 the California Supreme Court, which denied review on March 12, 2008.

1 | Lodgment nos. 8-9.

**II**

The California Court of Appeal made the following factual findings underlying petitioner's offenses:[1]  On December 3, 2005, Santa Barbara Police Officer Rashun Drayton was working at a DUI (driving under the influence) checkpoint.  Petitioner, who was driving a vehicle, approached the checkpoint but avoided it by turning into the driveway of a motel.  Petitioner parked the vehicle in the motel parking lot.

Officer Drayton walked to the parking lot and conversed with petitioner, whom he recognized from a previous contact.  Drayton asked petitioner if he was still on parole, and petitioner responded in the affirmative.  At Drayton's request, petitioner stepped out of the vehicle.  Drayton noted that petitioner displayed symptoms "of either alcohol or drug use."

Petitioner "seemed a bit nervous. . . .  He was continually placing his hands in and out of his pockets."  Finally, petitioner pulled an object out of his pocket and threw it over a hedge "into the adjoining parking lot."  Petitioner then ran away from Officer Drayton, but he was tackled by another officer, Sergeant McGrew.

After a struggle, Drayton and McGrew subdued petitioner and handcuffed him.  Drayton retrieved the object petitioner had thrown into the adjoining parking lot.  It was "one solid mass piece" of

---

[1] Lodgment no. 5 at 2.

cocaine. The net weight was 11.53 grams.

After petitioner was arrested, he made a telephone call from jail to his brother. The call was recorded. During the conversation, petitioner referred to the cocaine and said, "You know what[,] I have had it since I've been out, I just wasn't doing it."

### III

Effective July 27, 2008, petitioner, proceeding pro se, filed the pending habeas corpus petition under 28 U.S.C. § 2254, raising the sole claim that the trial court violated Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), in finding "there was no prima facie case of impermissible group bias with respect to [a] peremptory challenge by [the] prosecutor of [the] sole African-American prospective juror." Petition at 5. On January 8, 2009, respondent filed her answer to the petition, and petitioner filed a reply on April 13, 2009.

### DISCUSSION
### IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." Lockyer v. Andrade, 538 U.S. 63, 70, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003); Wiggins v. Smith, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534, 156 L. Ed. 2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

//

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim- [¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The California Supreme Court reached the merits of petitioner's claims when it denied his petition for review without comment or citation to authority.  Gaston v. Palmer, 417 F.3d 1030, 1038 (9th Cir. 2005), amended by, 447 F.3d 1165 (9th Cir. 2006), cert. denied, 549 U.S. 1134 (2007); Hunter v. Aispuro, 982 F.2d 344, 348 (9th Cir. 1992), cert. denied, 510 U.S. 887 (1993).  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991); Medley v. Runnels, 506 F.3d 857, 862 (9th Cir. 2007) (en banc), cert. denied, 552 U.S. 1316 (2008).

1  Thus, in addressing petitioner's claim, this Court will consider the
2  reasoned opinion of the California Court of Appeal denying the claim.
3  <u>Maxwell v. Roe</u>, 606 F.3d 561, 568 (9th Cir. 2010); <u>Vasquez v.</u>
4  <u>Kirkland</u>, 572 F.3d 1029, 1035 (9th Cir. 2009), <u>cert. denied</u>, 130
5  S. Ct. 1086 (2010).

V

8   A prosecutor's discriminatory use of peremptory challenges on the
9  basis of race violates the equal protection clause of the United
10 States Constitution.  <u>Miller-El v. Dretke</u>, 545 U.S. 231, 237-40, 125
11 S. Ct. 2317, 2323-25, 162 L. Ed. 2d 196 (2005); <u>Batson</u>, 476 U.S. at
12 89, 106 S. Ct. at 1719.  Indeed, "the 'Constitution forbids striking
13 even a single prospective juror for a discriminatory purpose.'"
14 <u>Williams v. Runnels</u>, 432 F.3d 1102, 1107 (9th Cir. 2006) (quoting
15 <u>United States v. Vasquez-Lopez</u>, 22 F.3d 900, 902 (9th Cir.), <u>cert.</u>
16 <u>denied</u>, 513 U.S. 891 (1994)); <u>Snyder v. Louisiana</u>, 552 U.S. 472, 478,
17 128 S. Ct. 1203, 1208, 170 L. Ed. 2d 175 (2008).

19   "*Batson* provides a three-step process for a trial court to use in
20 adjudicating a claim that a peremptory challenge was based on race."
21 <u>Snyder</u>, 552 U.S. at 476, 128 S. Ct. at 1207 (internal quotation marks
22 and citations omitted); <u>Batson</u>, 476 U.S. at 96-98, 106 S. Ct. at 1723-
23 24.  "First, the trial court must determine whether the defendant has
24 made a prima facie showing that the prosecutor exercised a peremptory
25 challenge on the basis of race."  <u>Rice v. Collins</u>, 546 U.S. 333, 338,
26 126 S. Ct. 969, 973, 163 L. Ed. 2d 824 (2006); <u>Batson</u>, 476 U.S. at 96-
27 97, 106 S. Ct. at 1723.  "Second, once the defendant has made out a
28 prima facie case, the 'burden shifts to the State to explain

6

adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes." Johnson v. California, 545 U.S. 162, 168, 125 S. Ct. 2410, 2416, 162 L. Ed. 2d 129 (2005) (quoting Batson, 476 U.S. at 94, 106 S. Ct. at 1721); Snyder, 552 U.S. at 476-77, 128 S. Ct. at 1207. "Although the prosecutor must present a comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices." Collins, 546 U.S. at 338, 126 S. Ct. at 973-74 (quoting Purkett v. Elem, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995) (per curiam)). "Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.'" Johnson, 545 U.S. at 168, 125 S. Ct. at 2416 (quoting Elem, 514 U.S. at 767, 115 S. Ct. at 1770-71); Batson, 476 U.S. at 98, 106 S. Ct. at 1724. "This final step involves evaluating 'the persuasiveness of the justification' proffered by the prosecutor, but 'the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.'" Collins, 546 U.S. at 338, 126 S. Ct. at 974 (quoting Elem, 514 U.S. at 768, 115 S. Ct. at 1771). The same test applies whether or not the defendant and the excluded jurors are of the same race. Powers v. Ohio, 499 U.S. 400, 415, 111 S. Ct. 1364, 1373, 113 L. Ed. 2d 411 (1991); Paulino v. Castro, 371 F.3d 1083, 1090-91 n.6 (9th Cir. 2004).

Petitioner claims the prosecutor improperly exercised a peremptory challenge to remove the only black juror in the venire in violation of *Batson*. The California Court of Appeal set forth the

following factual and procedural summary of petitioner's claim:

> The *Wheeler-Batson*[2] motion concerned the prosecutor's peremptory challenge of a black juror, Mr. M.  During voir dire, Mr. M. said that, "[i]f all 12 jurors had [his] mind[-]set," he was "not sure" whether both sides would "be able to get a fair trial."  Later, in response to the prosecutor's question whether he had experienced negative encounters with law enforcement, Mr. M. said: "I've been pulled over a few times.  Been harassed by the cops a couple times."  In addition, Mr. M. stated that, based on "some of the things [he had] seen in the past," he had "some slightly negative opinion with law enforcement."  Although Mr. M. "guessed" that law enforcement officials "overall" were "good guys," he also "guessed" that he had "met a couple of bad ones."  [¶]  The prosecutor noted that one of the charges against [petitioner] was that he had "resisted an officer by force or violence."  The prosecutor asked Mr. M.: "And when you say you've been harassed have you ever felt like not submitting or not being compliant. . . ?"  Mr. M. responded, "Yeah."  Despite his feelings, Mr. M. indicated that he had not resisted: "I just kept calm, just listened to what they had to say.  They didn't like try to use like physical force or anything on me.  It was just all verbal.

---

[2] People v. Wheeler, 22 Cal. 3d 258, 148 Cal. Rptr. 890 (1978), "is the procedural equivalent of a *Batson* challenge in California."  Paulino, 371 F.3d at 1088 n.4; Williams v. Rhoades, 354 F.3d 1101, 1104 (9th Cir.), cert. denied, 543 U.S. 926 (2004).

```
 1       I just kind of took it and they'd leave me alone."  Mr. M.
 2       assured the prosecutor that the harassment he had
 3       experienced would not "have any effect" on his ability to be
 4       a fair and impartial juror. [¶] . . . In arguing that he
 5       had made out a prima facie case of group bias,
 6       [petitioner's] trial counsel stated as follows: "The facts
 7       as I see them are that Mr. [M.] is the only African American
 8       in the box at this time.  He appears to be one of two
 9       African Americans of all the jurors that have come in so
10       far, and . . . [the prosecutor] appeared to ask him
11       questions regarding his experience with police that were
12       different than the other questions in the sense that more of
13       them were asked and there was more probing in that area
14       perhaps to get him to acknowledge that he had some incidents
15       with police in the past.  I realize that some of those
16       questions were asked of other jurors.  I believe the juror
17       immediately before him who appeared to be an older white
18       lady was asked the same thing.  And I think, if anything, it
19       shows that [the prosecutor] is aware of the possibility that
20       he'd be criticized for excusing an African American juror
21       and was trying to deal with [it] preemptively." [¶] The
22       prosecutor responded that [petitioner] had failed to make
23       out a prima facie case of group bias.  The prosecutor,
24       nevertheless, set forth her reasons for challenging Mr. M.
25       in the event that an appellate court should later conclude
26       that [petitioner] had made out a prima facie case.  The
27       prosecutor acted properly in following this procedure: "Even
28       where the trial court has not found a prima facie case of
```

1      discrimination, which would require the prosecutor to state
2      reasons for the challenged excusals, it is helpful, for
3      purposes of appellate review, to have the prosecutor's
4      explanation.  We therefore encourage court and counsel in
5      all *Wheeler/Batson* proceedings to make a full record on the
6      issue. . . .  [T]he prosecutor's voluntary decision to state
7      reasons in advance of a prima facie ruling does not
8      constitute an admission or concession that a prima facie
9      case exists."  [¶]  The trial court ruled that [petitioner]
10     had failed to make out a prima facie case of group bias.
11     Furthermore, the trial court concluded that the prosecutor's
12     stated reasons for challenging Mr. M. did not "suggest
13     anything inappropriate in intent."
14
15 Lodgment no. 5 at 3-5 (citation omitted; footnote added); see also
16 Reporter's Transcript ("RT") 203:20-204:11.  The Court of Appeal then
17 denied the *Batson* claim, stating:
18
19     "The dispositive question here is whether [petitioner]
20     demonstrated a prima facie case of group bias."  In
21     determining whether [petitioner] carried his burden, we need
22     not consider the prosecutor's stated reasons for exercising
23     the peremptory challenge: "[W]hen an appellate court is
24     presented with such a record, and concludes that the trial
25     court properly determined that no prima facie case was made,
26     it need not review the adequacy of counsel's justifications
27     for the peremptory challenges."  [¶]  We conclude that
28     [petitioner] failed to demonstrate a prima facie case of

group bias. "'"[T]he record suggests grounds upon which the prosecutor might reasonably have challenged the juror[] in question."'"  Mr. M. said that he had "[b]een harassed by the cops a couple times," that he had "some slightly negative opinion with law enforcement," and that he was "not sure" whether both sides would receive a fair trial "[i]f all 12 jurors had [his] mind[-]set."  [¶]  Moreover, Mr. M. stated that, when he had been harassed by law enforcement, he had "felt like not submitting or not being compliant."  This comment was significant because one of the charged offenses was resisting an executive officer in violation of [P.C.] section 69.  The prosecutor could have reasonably been concerned that a juror who had "felt like not submitting or not being compliant" would sympathize with [petitioner].  [¶]  We also observe that [petitioner's] alleged prima facie case was based on the prosecutor's single peremptory challenge of a black juror.  The only other black person on the jury panel was a woman who asked to be excused, and who was excused, for cause.  "Although circumstances may be imagined in which a prima facie case could be shown on the basis of a single excusal, in the ordinary case, . . . to make a prima facie case after the excusal of only one or two members of a group is very difficult."

Lodgment no. 5 at 5-6 (citations omitted).

To make a prima facie showing that the prosecutor has exercised

11

1 his peremptory challenges on the basis of race, "the defendant . . .
2 must show that . . . the prosecutor has exercised peremptory
3 challenges to remove from the venire members of [a cognizable racial
4 group]." Batson, 476 U.S. at 96-98, 106 S. Ct. at 1723-24 (citations
5 omitted). Further, the defendant "must show that the[] facts and any
6 other relevant circumstances raise an inference that the prosecutor
7 used [peremptory challenges] to exclude the veniremen from the petit
8 jury on account of their race." Id. Only after a defendant has met
9 the initial burden of making a prima facie showing, does the burden
10 shift to the prosecution to offer a race-neutral reason for the
11 exercise of peremptory challenges. Elem, 514 U.S. at 767, 115 S. Ct.
12 at 1770; Batson, 476 U.S. at 97, 106 S. Ct. at 1723. When, as here, a
13 state court has applied the appropriate "raise an inference" standard,
14 a state court's ruling on whether a criminal defendant has established
15 a prima facie case of prosecutorial discrimination is entitled to a
16 "presumption of correctness" on federal habeas review. Fernandez v.
17 Roe, 286 F.3d 1073, 1077 (9th Cir.), cert. denied, 537 U.S. 1000
18 (2002); Wade v. Terhune, 202 F.3d 1190, 1195 (9th Cir. 2000).

20 "'[T]he fact that the juror was the one Black member of the
21 venire does not, in itself, raise an inference of discrimination.'"
22 Wade, 202 F.3d at 1198 (quoting Vasquez-Lopez, 22 F.3d at 902); see
23 also Tolbert v. Gomez, 190 F.3d 985, 988 (9th Cir. 1999) ("[T]he
24 striking of one juror of a cognizable racial group does not by itself
25 raise an inference of discriminatory purpose."). "Instead, the . . .
26 court must consider the totality of relevant circumstances." Tolbert,
27 190 F.3d at 988; Boyd v. Newland, 467 F.3d 1139, 1146-47 (9th Cir.
28 2006). There are "two main ways" for this Court to assess

12

petitioner's *Batson* claim in light of the 'totality of the relevant facts'": "percentages" and "comparative juror analysis." Boyd, 467 F.3d at 1147-48 (quoting Batson, 476 U.S. at 94, 106 S. Ct. at 1721); see also Crittenden v. Ayers, __ F.3d __, 2010 WL 3274506, *9 (9th Cir. (Cal.)) ("[C]omparative juror analysis may be employed at step one to determine whether the petitioner has established a prima facie case of discrimination.").

Here, due to Mr. M. being the only eligible black juror, "the small size of the sample of blacks in the venire diminishe[s] the significance of a comparison between these percentages." Paulino, 371 F.3d at 1091; Wade, 202 F.3d at 1198. Further, the record demonstrates that Mr. M. was the ninth of ten peremptory challenges the prosecutor used, RT 126:13-14, 130:21-22, 148:2-3, 156:21-22, 165:28-166:2, 174:5-6, 179:27-28, 184:1-4, 191:22-23, 222:15-18, and petitioner has not shown the prosecutor's "other peremptory challenges . . . suggest a general pattern of discrimination against racial minorities." Vasquez-Lopez, 22 F.3d at 902. Similarly, comparing the prosecutor's treatment of Mr. M. with other jurors does not assist petitioner in establishing a prima facie case of discrimination. See United States v. Collins, 551 F.3d 914, 921 (9th Cir. 2009) ("Comparative juror analysis involves comparing the characteristics of a struck juror with the characteristics of other potential jurors, particularly those jurors whom the prosecutor did not strike."). Rather, the record shows that Mr. M., who was a single male employed as a customer service representative by an airline, had no prior juror experience. RT 55:26-56:12, 118:17-26. As the Court of Appeal noted, Mr. M. stated he was "not sure" whether both sides would be able to

13

get a fair trial if all 12 jurors had his mind set, RT 87:3-7, and when asked if he had any experiences "strongly positive or strongly negative" with law enforcement, Mr. M. responded he has been "harassed by the cops a couple of times[,]" but he "just kept calm [and] listened to what they had to say" and he did not believe his past experiences would have any effect on his ability to be a fair and impartial juror.  RT 118:27-119:21.

Petitioner's claim that the prosecutor's voir dire of Mr. M. raises an inference of bias because Mr. M. was the first juror to be asked about his experiences with law enforcement, Petition at 5a, conflicts with the record.  As the Court of Appeal found, the prosecutor asked other jurors about their experiences with law enforcement both before and after questioning Mr. M., see, e.g., RT 118:7-10, 151:3-6, 164:7-25, 178:24-179:1, 186:14-187:2, and the prosecutor exercised a peremptory challenge against the only other juror who stated he had a negative experience with law enforcement.[3]

---

[3]  That juror stated:

> I had an experience with the local police department where I was involved in an accident.  And I was actually hit by a car on my bike and got a serious concussion.  But it was decided by the police on the scene that my behavior was not the result of a concussion, but, in fact, intoxication.  And so despite my concussion and broken hand I was cuffed and taken to jail.  So I had a bad experience with the police in that situation.

RT 158:20-159:6.  The juror also indicated it was cheaper for him to pay the fine than contest the matter in court.  RT 160:2-6. Despite this incident, the juror believed he could equally evaluate the testimony of law enforcement and civilian witnesses. RT 164:18-25.  Nevertheless, the prosecutor exercised a

14

RT 158:27-159:6. Since petitioner does not otherwise argue that jurors similarly situated to Mr. M. were allowed to remain on the jury, his claim rests solely on the fact that Mr. M. was the only black prospective juror and the prosecutor exercised a peremptory challenge against him;[4] however, this is simply insufficient to raise an inference of discrimination. Wade, 202 F.3d at 1198; Tolbert, 190 F.3d at 988.

Accordingly, the California Supreme Court's denial of petitioner's *Batson* claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

**RECOMMENDATION**

IT IS RECOMMENDED that the Court issue an Order: (1) adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

DATE: September 10, 2010            /S/ ROSALYN M. CHAPMAN
                                       ROSALYN M. CHAPMAN
                                    UNITED STATES MAGISTRATE JUDGE

---

peremptory challenge against this juror. RT 165:28-166:2.

[4] Petitioner also challenges the step two reasons the prosecutor volunteered for excusing Mr. M. However, since the California Court of Appeal focused entirely on step one, and concluded petitioner had not established a prima facie case, Lodgment no. 5 at 5-6, and this Court has determined that finding is neither contrary to nor an unreasonable application of clearly established federal law, it would be improper for this Court to also address step two (or step three) of the *Batson* analysis. See Cooperwood v. Cambra, 245 F.3d 1042, 1048 (9th Cir.) ("[B]ecause there was no prima facie *Batson* violation, we need not reach the quality of the prosecution's response, as none was required."), cert. denied, 534 U.S. 900 (2001).

R&R\08-5203.r&r - 9/8/10